UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3:24-CR-067-CHB-01, 03 |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH LANHAM (01), | ) | **MEMORANDUM OPINION** |
| LAURA LANHAM (03), | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on three motions. First, Defendant Joseph Lanham[1] filed a Motion to Suppress Cell Phone Data and Text Message Records ("First Motion to Suppress"). [R. 46]. The United States filed a response opposing the Motion to Suppress, [R. 57], and Joseph Lanham replied. [R. 66]. Meanwhile, Defendant Laura Lanham filed a Motion to Adopt and Join in Co-Defendant Joseph Lanham's Motion to Suppress Cell Phone Data and Text Message Records ("Motion to Join"). [R. 58]. The United States did not respond to that motion. Joseph then filed a Motion for Hearing, requesting that the Court schedule a hearing on the First Motion to Suppress. [R. 64]. The United States thereafter filed a response in opposition to the Motion for Hearing. [R. 74]. Joseph then sought an extension of time to file replies to the United States' responses to his various motions, including a second motion to suppress, [R. 62], which the Court will address by separate order. [R. 83]. Inexplicably, he also requested an extension of time to file a reply regarding the First Motion to Suppress, despite having already filed a reply. *Id.*; *see also* [R. 66 (Reply to First Motion to Suppress)]. Nevertheless, his request was granted, [R. 84], and he

---

[1] For clarity, the Court will refer to Joseph and Laura Lanham by their first names.

filed an additional reply that addresses his First Motion to Suppress, as well as his second suppression motion. [R. 88]. This matter is therefore ripe for review. For the following reasons, the Court will grant the Motion to Join, [R. 58], but will deny the Motion for Hearing, [R. 74], and the Motion to Suppress, [R. 46].

## I.    BACKGROUND[2]

On June 4, 2024, Defendants Joseph, Laura, and Richard "Ricky" Elble II were indicted by a grand jury for Money Laundering Conspiracy (Count 1), Monetary Transactions in Proceeds of Specified Unlawful Activity (Counts 2–5), Obstruction of Proceedings Before Departments and Agencies (Count 6), and Falsification of Records in a Federal Investigation (Count 7). [R. 1]. Joseph was indicted on all counts, while Laura was only indicted on Counts 1 and 3, and Elble was indicted only on Count 1. *Id.* All of the defendants have pled not guilty to the charges in the Indictment. *See* [R. 11]; [R. 23]; [R. 24].

According to the facts alleged in the Indictment, Joseph "engaged in narcotics trafficking activities for which he received cash proceeds" and "purchased numerous vehicles, vessels, and properties, using various methods to conceal his actual ownership and control over his real and personal property, as well as their source," including having Laura, his mother, and Elble, a relative by marriage, act "as nominee purchasers and owners in his transactions and [carry] out other transactions on his behalf." *See* [R. 1, ¶¶ 2–4].

On April 29, 2025, Joseph filed his First Motion to Suppress. [R. 46]. His motion seeks to exclude "all of the data and text message records obtained from the forensic search of all of the Defendants' cellular phones." *Id.* at 1. As already explained, Laura seeks to join this motion,

---

[2] The Court has provided a detailed factual overview of this case in its Memorandum Opinion and Order on the parties' second suppression motion. That Memorandum Opinion and Order also thoroughly explains how the various premises warrants, which authorized the seizure of the cell phones, are supported by probable cause.

[R. 58]. Joseph also requests a hearing on this motion. [R. 64]. These three motions are ripe for review, *see* [R. 57], [R. 66], [R. 74], [R. 88], and the Court will address each in turn.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(3)(C) permits defendants to file pretrial motions to suppress evidence, which are "appropriate when evidence sought to be introduced in a criminal case is alleged to have been unlawfully obtained." *United States v. Guzman*, No. 5:10-CR-00020, 2011 WL 1899767, *1 (W.D. Ky. May 19, 2011) (citation omitted), "'The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.'" *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). Should a court find that evidence was unlawfully obtained, "the Supreme Court has long held that evidence collected in violation of the Fourth Amendment may be excluded from the criminal trial of the victim of the unlawful search." *See United States v. Novak*, 814 F. App'x 1009, 1012 (6th Cir. 2020) (citing *Mapp v. Ohio*, 367 U.S. 643, 648 (1961)).

## III.    ANALYSIS

### A.  Motion to Join, [R. 58]

The Court first considers Laura's Motion to Join. [R. 58]. No response was filed to this motion, and the Court therefore understands that the United States has no objection to Laura's request. Accordingly, the Court will grant Laura's Motion to Join, [R. 58].

### B.  Motion for Hearing, [R. 64]

Next, the Court briefly addresses the Motion for Hearing. [R. 64]. In his single-sentence motion, Joseph asks the Court "to schedule a hearing on [the First Motion to Suppress]." *Id.* at 1. The Court understands that Joseph seeks oral argument on his motion; however, he has offered no

explanation as to why oral argument would be helpful to the Court or necessary for the resolution of the motion. Indeed, his motion is wholly lacking in any argument or citation to authority. *See id.* Moreover, having reviewed the motion and the extensive briefing on this matter, the Court does not believe that oral argument is necessary.

Additionally, in his second reply brief, which addressed several pending motions, Joseph states that "the affidavits supporting the warrants to search and seize the property from homes, vehicles, and cell phones to extract and download cell phone data were based on false information and mere speculation." [R. 88, p. 2]. From the best the Court can tell, this argument relates only to Joseph's second suppression motion, in which Joseph requests a *Franks* hearing on the various premises warrants. *See id.* Those premises warrants are not at issue in this case, as explained below, and are instead addressed by separate order. Moreover, to the extent this is an attempt to request a *Franks* hearing with respect to the warrants that authorize data extraction from the cell phones, it is improper to raise such arguments for the first time in a reply brief, and the Court will not consider it. *See Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived."); *see also Settle v. Parris*, No. 3:19-CV-32, 2021 WL 1566074, at *5 (E.D. Tenn. Apr. 21, 2021) ("[O]rdinarily, courts do not consider an argument that a party raises for the first time in a reply brief."); *Laughlin v. United States*, No. 20-5433, 2020 WL 9423256, at *2 (6th Cir. Oct. 28, 2020).

The Court will therefore deny the Motion for Hearing. [R. 64]. Having addressed both the Motion to Join, [R. 58], and the Motion for Hearing, [R. 64], the Court next turns to the First Motion to Suppress. [R. 46].

### C. First Motion to Suppress, [R. 46]

Defendants' First Motion to Suppress seeks to exclude "all of the data and text message records obtained from the forensic search of all of the [d]efendants' cellular phones." [R. 46, p. 1].[3] As grounds for the Motion, Defendants argue "[t]he warrants executed to obtain said cell phone data used overbroad language, lacked sufficient particularity, lacked specificity in the Forensic Analysis section regarding search methodologies, and created a chain of custody issue through multi-agency handling of the data." *Id.* The United States, in response, argues that a defendant lacks the ability to challenge any searches other than those of their own cellphones and that the warrants were constitutionally valid. *See generally* [R. 57].

Before turning to the merits of the defendant's arguments, the Court will first address the timeliness and the scope of the motion.

### 1. The Timeliness of the Motion

Joseph's First Motion to Suppress was filed on April 29, 2025. [R. 46]. Laura's Motion to Join was filed on June 13, 2025. [R. 58]. However, according to Joseph's Order Following Arraignment and Scheduling Order, [R. 11], his deadline for filing defensive motions, including motions to suppress, was thirty-five days after his arraignment, or July 11, 2024. *Id.* at 5; *see also* [R. 24, p. 5 (setting Laura's dispositive motions deadline as thirty-five days after her arraignment, or July 18, 2024)]. No other orders extended this deadline, and no such extension was requested. However, neither the United States nor the defendants discuss the motion's untimeliness. While the Court could deny the First Motion to Suppress on this ground alone, *see generally United States v. Walden*, 625 F.3d 961, 964 (6th Cir. 2010) (citing Fed. R. Crim. P. 12(c)), given the United

---

[3] For the remainder of this opinion, the Court uses "Defendants" to refer only to Joseph Lanham and Laura Lanham. Elble has not joined the First Motion to Suppress.

States' lack of objection and the length of time before trial, it will nonetheless evaluate the merits of the motion.

## 2. The Scope of the Motion

Next, the Court must determine exactly which warrants and which searches are challenged in the instant motion. The motion lists and attaches eight state court warrants that Defendants characterize as having "authorized the extraction" of the challenged information. [R. 46, pp. 1–2].[4] However, the Court has reviewed each of the state court warrants and understands that four of the warrants are for premises, and three of those premises warrants permitted only the seizure of the cell phones themselves, not the extraction of data from the phones. *See* [R. 46-1 ("the Johnsontown Warrant")]; [R. 46-2 ("the Nanisinh Warrant")]; [R. 46-3 ("the Pine Lake Warrant")]. Only one premises warrant authorized a data search of any seized cellphones. [R. 46-4, pp. 11–13 ("the Sea Wave Warrant")]. Importantly, however, that specific premises is *not* alleged to belong to either Joseph or Laura Lanham. *See id.* at 7 (alleging it to be the residence of Brian Reed Jr.). Instead, Joseph and Laura's primary addresses are respectively alleged to be on Pine Lake Drive, [R. 46-5, p. 2], and Johnsontown Way, [R. 48-8, p. 2]. As already explained, neither the Pine Lake Warrant nor the Johnsontown Warrant permitted data extraction from any

---

[4] The United States asserts that a federal warrant was issued after Lanham's arrest, "allowing searches of three additional cell phones seized from [his] truck after his arrest." [R. 57, pp. 2–3]; *see also* [R. 57-2 (Federal Warrant and Affidavit)]. However, as the United States points out, Joseph "has not directly challenged the federal warrant." *Id.* at 3. Then, in his second reply brief, Joseph argues that "[t]he state court warrants, *and the federal court warrant*, lacked any methodology or forensic analysis except for that they intended to search the entire phone data." [R. 88, p. 4 (emphasis added)]. It is improper to challenge the federal warrant for the first time in his reply brief (indeed, his *second* reply brief). *See Braun v. Ultimate Jetcharters, Inc.*, No. 5:12-CV-1635, 2014 WL 12584328, at *1 (N.D. Ohio Feb. 25, 2014). Moreover, Joseph has not discussed that warrant in any detail, nor developed any specific arguments relating to that warrant. The Court therefore declines to address it further but notes that any such challenge would be even more untimely and undeveloped. *See Members Heritage Credit Union v. N.Y. Marine & Gen. Ins. Co.*, No. 5:21-CV-207, 2023 WL 4876383, at *13 (E.D. Ky. July 31, 2023) (explaining that the party's argument "is wholly undeveloped, and the Court need not consider it"). Regardless, the Court has reviewed the federal warrant and its detailed affidavit, [R. 57-2], and finds that, to the extent Joseph challenges that warrant, such arguments would fail for the reasons stated in this Memorandum Opinion and Order.

seized cellphones. *See* [R. 46-3, pp. 2, 7]; [R. 46-1, p. 9]. The Court therefore understands that Defendants are not challenging the four premises warrants in the First Motion to Suppress, as those warrants did not authorize data extraction from Joseph or Laura's cell phones.[5]

Upon seizing various cell phones pursuant to the above-listed premises warrants, officers then sought and received four additional warrants for "[a]ny/all electronic data contained in [the] [p]hones." *See* [R. 46-5, p. 6 (Warrant re: Joseph's Phones)]; [R. 46-6, p. 6 (Warrant re: Joseph's Son's Phone)]; [R. 46-7, p. 6 (Warrant re: Brian Reed's Phones)]; [R. 46-8, p. 6 (Warrant re: Laura's Phones)]. Only two of these warrants related to the cell phones seized from the Pine Lake premises (Joseph's primary address) and the Johnsontown premises (Laura's primary address). *See* [R. 46-5]; [R. 46-8]. The other warrants for cellphone searches involved a phone seized from a traffic stop of Joseph's son, *see* [R. 46-6], and two cellphones seized pursuant to the Sea Wave Warrant belonging to its resident, *see* [R. 46-7]. The Court understands that these four warrants, each of which permits the extraction of data from the cell phones addressed therein, are the warrants at issue in the First Motion to Suppress.

However, Defendants do not have standing to challenge each of these four warrants. The Sixth Circuit, acknowledging Supreme Court precedent, has noted that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Rakas*, 439 U.S. at 133–34 (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969))). The Supreme Court has also held that,

> "[i]n order to qualify as a person aggrieved by an unlawful search and seizure one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only thorough the use of

---

[5] To the extent the defendants challenge the premises warrants on other grounds, they do so in a second suppression motion, [R. 62], which the Court addresses by separate order.

evidence gathered as a consequence of a search or seizure directed at someone else."

*Id.* (quoting *Rakas*, 439 U.S. at 134–35); *see also Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he *personally* has an expectation of privacy in the place searched, and that his expectation is reasonable. . . ." (emphasis added)).

In *United States v. Molina*, 569 F. Supp. 3d 596 (E.D. Ky. 2021), the district court affirmed the magistrate judge's finding that the defendant "did not have standing to challenge the search of [a co-defendant's] phone" that was seized pursuant to a warrant for their shared residence. *Id.* at 604, 608. The magistrate judge had found that the defendant

> ha[d] neither asserted nor demonstrated any ownership or possessory interest in any of [his co-defendant's] cell phones. "[B]ecause Fourth Amendment rights are personal, suppression of evidence as the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Critically, a person "with no possessory interest" in property has no standing to challenge the search of that property on Fourth Amendment privacy grounds.

*Id.* at 621 (first quoting *United States v. Powell*, 847 F.3d 760, 768 (6th Cir. 2017); then quoting *United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015)).

Similarly, Defendants Joseph and Laura have "neither asserted nor demonstrated any ownership or possessory interest" in the cellphones that did not belong to them—namely, those belonging to Joseph's son, [R. 46-6], or to their associate, Brian Reed, [R. 47-7]; [R. 46-4]. *See Molina*, 569 F. Supp 3d at 621. Indeed, neither Joseph nor Laura have addressed this issue, despite it being raised by the United States, *see* [R. 57, pp. 2–4], and they do not dispute that they are only entitled to seek suppression of the evidence obtained from their cell phones. *See* [R. 66 (Reply)]. The Court thus finds that, "because Fourth Amendment rights are personal," *Powell*, 847 F.3d at 768, Joseph has standing only to challenge the warrant issued for his cellphones, [R. 46-5]. For the

same reason, Laura has standing only to challenge the warrant issued for her cellphones, [R. 46-8]. Therefore, the Court will evaluate the First Motion to Suppress only as to the warrants permitting data extraction from Joseph and Laura's cellphones. *See* [R. 46-5]; [R. 46-8] (collectively "the cellphone warrants").

Having addressed both the scope of the motion as well as its timeliness, the Court now turns to Defendants' arguments: first, that the warrants were overly broad and lacked sufficient particularity; second, that the warrants lacked specificity regarding the methods of extraction; and finally, that the search warrants created chain of custody and related issues.

### 3.  Overbreadth and Lack of Particularity

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "The text of the [Fourth] Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citation omitted).

Defendant's first argument focuses on the Fourth Amendment's particularity requirement.[6] More specifically, the motion first asserts that the warrants "used overbroad language [and] lacked sufficient particularity." [R. 46, p. 1]. The challenged language in the cellphone warrants permitted law enforcement to search:

---

[6] In their First Motion to Suppress, [R. 46], Defendants do not argue that the search warrants permitting data extraction lacked probable cause. To the extent they challenge probable cause relating to the premises warrants, they do so in a second suppression motion that the Court addresses by separate order. *See* [R. 62].

> [a]ny/ all electronic data contained in Phones seized . . . to include data that may identify the owner or user of the cellular phone, address books and calendars, audio and video clips, contact lists, call histories and call logs, text messages (SMS), multimedia messages (MMS), recorded messages, subscriber information modules (SIM Cards), E-mail messages and attachments (whether read or unread), Internet World Wide Web (WWW) browser files (including but not limited to, browser history, browser cache, stored cookies, browser favorites, auto complete from history and stored passwords), photographs, global position system (GPS) data including coordinates, way points and tracks, access to social media applications and/ or other data contained therein including all mobile apps and any other data that may be evidence of narcotics trafficking in violation of KRS 218A.

[R. 46-5, p. 6]; [R. 46-8, p. 5]. Defendants argue that this language is improper because: (1) the cellphone warrants "do not define a specific date range"; (2) they "lack limiting language to restrict the search to communications or data reasonably tied to narcotics trafficking"; and (3) "[t]he term 'any other data that may be evidence' is overly vague and invites an exploratory rummaging of the entire device." [R. 46, p. 2]. In response, the United States argues that "[a] cell phone warrant is not automatically overbroad because it allows for the whole device to be searched," and "the affidavits and warrants supporting searches of the Defendant[s'] phones seek evidence related to marijuana trafficking and money laundering activity and provide support for why such evidence is likely to be found on [the] devices." [R. 57, pp. 4–5].

As previously explained, "[t]he Fourth Amendment demands that a search warrant 'particularly describ[e]' the places law enforcement may search and the things they may seize." *United States v. Castro*, 881 F.3d 961, 964 (6th Cir. 2018) (quoting U.S. Const. amend. IV), *cert. denied*, 141 S. Ct. 1447 (2021); *see also King*, 563 U.S. at 459. This particularity requirements prevents "the use of general warrants authorizing wide-ranging rummaging searches that violate the prohibition against unreasonable searches and seizures." *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011) (internal quotation marks and citation omitted). Thus, "the scope of a warrant should be confined to evidence relating to a specific crime, supported by probable cause." *Id.* However, the Sixth Circuit has noted that,

> "while a general order to explore and rummage is not permitted, the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." Therefore, "a description is 'valid if it is as specific as the circumstances and the nature of the activity under investigation permit.'"

*Id.* (quoting *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)).

The Sixth Circuit's *Castro* case is instructive. In *Castro*, the defendant challenged the particularity of the warrants authorizing a search of her cellphone. *See Castro*, 881 F.3d at 964–66. The defendant first challenged the language permitting law enforcement to search for information relating to "*a* crime" and suggested it should have said "*the* crime." *Id.* at 964–65 (emphasis added). The Court explained, however, that "[a] warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime." *Id.* at 965 (citations omitted). The affidavit in *Castro* described "evidence of probable cause that [the defendant] participated in several armed robberies," and the warrant also stated that there was "probable cause to believe that evidence of violations of Texas Penal Code 29.03 (Aggravated Robbery)[] exist[ed]" on the phone. *Id.* The language identifying the specific crimes at issue "served as a 'global modifier' that limited the scope of the warrant." *Id.* (quoting *United States v. Willoughby*, 742 F.3d 229, 233 (6th Cir. 2014)); *see also Andresen v. Maryland*, 427 U.S. 463, 479, 480–81 (1976) (holding that language in warrants permitting the search of "other fruits, instrumentalities and evidence of crime" did not make the warrant fatally general because it was "clear from the context that the term 'crime' in the warrants refer[red] only to the crime" articulated in the warrant") (internal quotation marks omitted). And while the sentence cited by the defendant referenced "a crime" rather than "the crime" of aggravated robbery, the Court found that such language must be read in the context of the warrant as a whole. *Id.* When "[r]ead as a whole, the warrants told officers they could search only for evidence related to the aggravated burglary." *Id.*

Relatedly, the Court acknowledges that the "'[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.'" *United States v. Lazar*, 604 F.3d 230, 238 (6th Cir. 2010) (alteration in original) (quoting *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999)), *cert. denied*, 562 U.S. 1140 (2011). However, the Sixth Circuit has found that "failure to specify a timeframe does not make [a] detailed warrant overbroad" when a "warrant specifie[s] a subject-matter limitation sufficient to limit the warrant to evidence of the crimes described in the affidavit." *United States v. Sullivan*, 751 F. App'x 799, 804–05 (6th Cir. 2018) (finding an otherwise "detailed warrant" for a laptop search was not overbroad when the affidavit limited the search to evidence of child pornography as described in the affidavit), *cert. denied*, 143 S. Ct. 2481 (2023); *see also United States v. Glatz*, No. 3:19-CR-218-TAV-DCP, 2023 WL 4503981, at *30 (E.D. Tenn. May 1, 2023), *report and recommendation adopted*, 2023 WL 4351503 (E.D. Tenn. July 5, 2023) (explaining that the failure to limit the seizure of electronic evidence to a specific time frame "does not turn [a] state search warrant into a general warrant . . . [because] 'a subject matter limitation,' such as the limitation provided by the specific crime can 'fulfill the same function as a time limitation would have done.'" (citation modified) (quoting *United States v. Ford*, 184 F.3d 566, 578 (6th Cir. 1999))).

In the present case, the warrants for Joseph and Laura's cell phones were limited to "data that may be evidence of narcotics trafficking in violation of KRS 218A." [R. 46-5, p. 6]; [R. 46-8, p. 5]. The affidavit details law enforcement's lengthy investigation into the defendants' alleged drug trafficking activities, as well as an explanation by the affiant as to how his training and experience had informed his awareness of how traffickers use cellphones. *See* [R. 46-5, pp. 2–4]; [R. 46-8, pp. 2–4]. Thus, read as a whole, the warrants told law enforcement officers that they could search only for evidence of narcotics trafficking. Therefore, Defendants' argument that the

warrants "lack limiting language to restrict the search to communications or data reasonably tied to narcotics trafficking," is wholly without merit, as is their argument regarding the lack of a specific date range. [R. 46, p. 2], Here, the above-described "subject-matter limitation [is] sufficient to limit the warrant to evidence of the crimes described in the affidavit," such that the lack of a specific data range does not make the warrant impermissibly broad. *See Sullivan*, 751 F. App'x at 805. For the same reason, the warrant is not "overly vague" nor does it "invite[] an exploratory rummaging." *Sullivan*, 751 F. App'x at 804; *Castro*, 881 F.3d at 965.

The defendants' remaining argument is that the language "any other data that may be evidence" is "overly vague and invites an exploratory rummaging of the entire device." [R. 46, p. 2]. For support, Defendants rely on a nonbinding case from the District of Columbia Court of Appeals. [R. 46, pp. 2–3 (discussing *Burns v. United States*, 235 A.3d 758 (D.C. 2020))]. However, that case is unpersuasive and easily distinguished. In *Burns*, the court found the warrant's permission to search the phones for "any evidence" of the indicated homicide was too broad when the affidavit set forth probable cause only for text messages and calls from a single night and location data for two days, "[b]ut beyond those discrete items, the affidavits stated no facts that even arguably provided a reason to believe that any other information or data on the phones had any nexus to the investigation." *Id.* at 769, 774. In this case, however, the affidavits attached to the warrants for Defendants' cell phones plainly explain the probable cause for the expansive search by providing a description of the lengthy investigation and an explanation by the affiant as to how his training and experience had informed his awareness of how traffickers use cellphones. *See* [R. 46-5, pp. 2–4]; [R. 46-8, pp. 2–4]. Defendants wholly fail to discuss this language in their motion.

And perhaps more importantly, Defendants do not argue that the affidavits in this case "could have provided a more specific description of the items subject to seizure." *Burns*, 235 A.3d at 777. This distinguishes the case from *Burns*, where the warrants could have been limited to a search for the limited number of text messages and calls (occurring on a single day) and the location data (spanning only two days). *Id.* Instead, the affidavits in this case "made robust showings of probable cause for a range of relevant evidence likely to be contained within the phones' data," and there is nothing to indicate that the affiant had "a way of knowing in advance precisely where within that data the evidence would be found." *Id.* at 776 (distinguishing *Burns* from cases "in which the affidavits submitted in support of the warrants made robust showings of probable cause for a range of relevant evidence likely to be contained within the phones' data, without a way of knowing in advance precisely where within that data the evidence would be found").

Moreover, the Sixth Circuit has explained that warrants for electronic data are often permissibly broad, given that it is frequently difficult to discern in what format the information will be. *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (noting that "[t]he affidavit set forth a substantial basis to believe such evidence [of the alleged crime] existed on [the defendant's] cell phone, but it was unclear as to the particular *format* in which the evidence existed" (emphasis in original)), *cert. denied*, 577 U.S. 884 (2015). In *Bass*, the warrant at issue authorized the search for any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs. *Id.* at 1050. At the time the warrant issued, "the officers could not have known whether this information was located in the phone or in what format." *Id.* "Thus," the Sixth Circuit explained, "the broad scope of the warrant was reasonable under the circumstances at that time." *Id.* So too here. In this case, as in *Bass*, "[t]he affidavit set

- 14 -

forth a substantial basis to believe" evidence of the crime of narcotics trafficking "existed on [Defendants'] cell phone[s], but it was unclear as to the particular *format* in which the evidence existed." *Id.* at 1049; *see generally* [R. 46-5]; [R. 46-8].

Because the warrants authorizing the search of the Defendants' cellphones were sufficiently particular and not overly broad, the Court will not suppress the data retrieved from their cellphones on this ground.

### 4. Specificity Regarding Search Methods and Forensic Tools

Next, Defendants argue that "[t]he warrants' authorizations for extraction by 'unspecified forensic tools and examiners,' including 'offsite facilities,' violates fundamental due process rights"[7] because "[t]his lack of specificity and oversight in tool selection and examiner conduct undermines the reliability and constitutionality of the evidence obtained." [R. 46, p. 3]. More specifically, Defendants argue that "the warrants in this case do not provide a detailed description of the methodology that would be used to conduct the forensic examination of the cell phones that were seized," and they "do not specify how non-relevant data would be handled to avoid over seizure of information outside the scope of the warrant." *Id.* at 4. This argument can best be summarized as follows: "Without a search protocol to narrow the examination to only material authorized by the warrant, the search becomes indistinguishable from a general search, which the Fourth Amendment explicitly prohibits." *Id.*

The challenged portions of the warrants read:

This device is to be analyzed by Detective Matthew Pribble of the Jeffersontown Police Department and/ or a certified cellular forensic examiner and/ or any federal, local, and state law enforcement agents, including technical personnel located at offsite locations.

---

[7] Defendants cite to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), but make no substantive arguments relating to these two cases. *See* [R. 46, p. 3].

> Based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of cellular phones, I know that it may be necessary for a certified cellular forensic examiner to perform a detailed off-site analysis on this cellular phone because cellular phone searches involve highly technical, complex, and dynamic processes.
>
> The cellular phone is in possession of the Jeffersontown Police Department and may be transported to a specialized law enforcement forensic facility or may be examined at the Jeffersontown Police Department by a certified forensic examiner where the cell phones may be subject to an in-depth forensic examination of the data by use of specialized software and techniques accepted by the computer forensic scientific community

[R. 46-5, p. 6]; [R. 46-8, pp. 5–6].

In arguing that this description is unconstitutional, Defendants point to a single out-of-circuit district court case, *Matter of the Search of Apple iPhone, IMEI 013888003738427* (hereinafter *In Re iPhone*), 31 F. Supp. 3d 159 (D.D.C. 2014), in which the magistrate judge "required [the United States to submit] an intended search protocol so that [he] could better understand the scope of the warrant," such as "[w]hether the target devices would be imaged in full, for how long those images will be kept, and what will happen to data that is seized but is ultimately determined not to be within the scope of the warrant." *Id.* at 165. Binding Sixth Circuit case law, however, has denounced such a requirement. As the Sixth Circuit has explained, "[g]iven the unique problem encountered in computer searches, and the practical difficulties inherent in implementing universal search methodologies, *the majority of federal courts have eschewed the use of a specific search protocol* and, instead, have employed the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis." *Richards*, 659 F.3d at 538 (emphasis added) (discussing computer searches); *see also United States v. Jefferson*, No. 14-20119, 2015 WL 3576035, at *6 (E.D. Mich. June 5, 2015), *aff'd sub nom. United States v. Johnson*, 726 F. App'x 393 (6th Cir. 2018), *cert. granted, judgment vacated sub nom. on other grounds Jefferson v. United States*, 139 S. Ct. 2772 (2019) (examining *In Re iPhone*, 31 F. Supp. 3d 159, finding "no Sixth

Circuit precedent—or even appellate precedent outside this Circuit—requiring that a warrant to search a cell phone specify a search protocol to satisfy the Fourth Amendment," and quoting *Richards*, 659 F.3d at 538).

The Sixth Circuit has also recognized that, "[a]s is the case with paper documents, on occasion in the course of a reasonable search, investigating officers may examine, 'at least cursorily,' some 'innocuous documents . . . in order to determine whether they are, in fact, among those papers authorized to be seized.'" *Richards*, 659 F.3d at 539 (alteration in original) (quoting *Andresen*, 427 U.S. at 482 n.11). "In other words," the Court explained, "so long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence." *Id.* at 540 (citation modified) (citation omitted). Indeed, the Court has explicitly "disagree[d]" with a defendant's argument that a warrant's "failure to describe with particularity the computer files to be searched or to require the use of a search protocol resulted in an unconstitutional general search." *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012); *see also United States v. Neuhard*, 770 F. App'x 251, 254 (6th Cir. 2019) (discussing *Richards* and *Evers* in the context of a cellphone search when the defendant "complain[ed] that the warrant did not include a search protocol," but noting Sixth Circuit "precedent does not require a search protocol in all cases"), *cert. denied*, 150 S. Ct. 570 (2019).

It is therefore evident from the case law that the Sixth Circuit does not require a strict search protocol to be outlined in a search warrant. *See Richards*, 659 F.3d at 538; *Evers*, 669 F.3d at 653; *Neuhard*, 770 F. App'x at 254. As previously discussed, the warrants at issue in this case contain sufficient limiting language by identifying the specific crime for which investigators could look for evidence. *See, e.g.*, *Richards*, 659 F.3d at 539–40 (collecting cases). Law enforcement was

- 17 -

permitted only to seize "data that may be evidence of narcotics trafficking in violation of KRS 218A," [R. 46-5, p. 6]; [R. 46-8, p. 5], and therefore the warrants "did not permit a free-ranging search." *Richards*, 659 F.3d at 541–42 (finding a warrant permitting the search of a whole computer server not overbroad because the warrant's scope was limited to the crime alleged); *United States v. Lostutter*, No. 5:16-CR-62-DCR-REW, 2016 WL 8761771, at *9 (E.D. Ky. Oct. 24, 2016), *recommended disposition adopted* [R. 67, *therein*] (noting that "[the d]efendant cite[d] no authority for the proposition that searching officers must follow a specific search protocol," and finding "the Sixth Circuit has eschewed imposing on officers specific computer-search steps or protocol," and "the Supreme Court has been clear that the Fourth Amendment does not require 'search warrants [to] include a specification of the precise manner in which they are to be executed.'" (quoting *United States v. Grubbs*, 547 U.S. 90, 98 (2006)) (citing *Richards*, 659 F.3d at 538))).

Moreover, as argued by the United States, Defendants' Motion "offers no support for the idea that the facility, examiner, or software application to be used must be identified within a cell phone search warrant." [R. 57, p. 9]. The Court could not independently locate any such authority The Court therefore cannot agree that the "lack of specificity and oversight in tool selection and examiner conduct undermine[d] the reliability and constitutionality of the evidence obtained." [R. 46, p. 3]. Especially when, as noted by the United States, the warrants "provide[] enough specificity to ensure reliable practices [were] used to conduct the search[es], while providing flexibility in terms of where and how the search[es] will be conducted," [R. 57, pp. 8–9], in their language permitting the phones to be examined by "*a certified forensic examiner* where the cell phones may be subject to an in-depth forensic examination of the data by use of *specialized software and techniques accepted by the computer forensic scientific community*." [R. 46-5, p. 6

(emphasis added)]; [R. 46-8, p. 6 (emphasis added)]. According to representations by the United States, the data was extracted using "Cellebrite UFED software, which is specifically designed for this type of extraction and forensic examination of cell phones." [R. 57, p. 9]; *see also United States v. Anderson*, 563 F. Supp. 3d 691, 696 (E.D. Mich. 2021), *aff'd* No. 22-1237, 2023 WL 3413905 (6th Cir. May 12, 2023) (noting that "Cellebrite [ ] has been tried and tested by Government attorneys in federal courts across the country").

In sum, while the warrants at issue in this case did not include a search protocol, the Sixth Circuit does not require that a search warrant include such protocols. *See Richards*, 659 F.3d at 538; *Evers*, 669 F.3d at 653; *Neuhard*, 770 F. App'x at 254. Instead, courts undertake "a reasonableness analysis on a case-by-case basis." *Neuhard*, 770 F. App'x at 254 (quoting *Richards*, 659 F.3d at 539. Generally, "'so long as the computer search is limited to a search for evidence explicitly authorized in the warrant,'" as is the case here, "'it is reasonable for the executing officers to open the various types of files' stored on the seized devices 'in order to determine whether they contain such evidence.'" *Id.* (quoting *Richards*, 659 F.3d at 540). For all of the reasons set forth above, the Court has no reason to believe that this general rule leads to unreasonable results in this case. *Id.*

Therefore, the lack of specified search protocols or methodologies does not make the warrants unconstitutionally overbroad. The warrants, instead, are limited in scope to evidence of narcotics trafficking and may be analyzed only by "techniques accepted by the computer forensic scientific community," of which Cellebrite is certainly one. *See* [R. 46-5, p. 6]; [R. 46-8, p. 6]. Thus, Defendants' Motion to Suppress will also be denied on these grounds.

### 5.    Chain of Custody and Related Issues

Defendants finally argue that the warrants improperly permitted a range of law enforcement personnel to access the phones' data, without safeguards as to "how many parties will access the data," "who will be responsible for maintaining its integrity," "whether all accessing parties are bound by the same evidentiary rules or privacy standards," and "if the data will be retained, duplicated, or shared beyond the scope of the original warrant." [R. 46, pp. 4–5]. Defendants claim that "[t]his multi-agency handling of the data raises chain of custody issues, risk of unauthorized data dissemination, and/or loss of judicial oversight, which violates Kentucky's standards for evidence handling and due process."[8] *Id.* at 5. Defendants also argue that there was a "substantial delay" between the phones' seizures and the forensic searches. *See id.* The United States responded, correctly classifying Defendants' argument as "devoid of any relevant legal authority calling for suppression," and concerned with only "hypothetical risks that might emerge in execution of the search warrant[s]." [R. 57, p. 10].

First, the Court notes that Defendants devote, at most, two sentences to this argument, and they fail to cite any legal authority whatsoever in support of their position. *See* [R. 46, pp. 4–5]. This undeveloped argument need not be considered by the Court. *See Members Heritage*, 2023 WL 4876383, at *13 (explaining that the party's argument "is wholly undeveloped, and the Court need not consider it"); *Brown v. Astrue*, No. 09-CV-384-HRW, 2010 WL 4878866, at *3 (E.D. Ky. Nov. 24, 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort

---

[8] The Court is at a loss as to why counsel has referenced Kentucky's "standards for evidence handling and due process," nor is it clear what is meant by "loss of judicial oversight." [R 46, p. 5]. To the extent Defendants attempt to raise an argument on these points, such arguments are so undeveloped that the Court cannot and will not address them. *See Members Heritage*, 2023 WL 4876383, at *13 (explaining that the party's argument "is wholly undeveloped, and the Court need not consider it"); *Brown v. Astrue*, No. 09-CV-384-HRW, 2010 WL 4878866, at *3 (E.D. Ky. Nov. 24, 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). In any case, the argument is without merit.

The United States argues—and Defendants do not dispute—that collaboration of "[n]umerous law enforcement agencies" is "routine[]" in investigating a case, and "[t]here is nothing unusual about this kind of coordination, nor is it the kind of activity typically described in warrants or their supporting affidavits." *See* [R. 57, p. 12]; *see generally* [R. 66]; [R. 88]. Indeed, according to the representations of the United States, the Jeffersontown Police Department does not have the internal capabilities to conduct cellphone data extraction and "must rely on partner agencies." *Id.* at 9. In this case, Joseph's phones (and, presumably, Laura's phones) were sent to a United States Secret Service facility. *Id.*; *see also* [R. 57-2 (documenting the chain of custody)]. Defendants offer no authority to suggest such collaboration is atypical, nor any evidence to substantiate their speculative chain of custody or improper dissemination concerns. *See* [R. 46, pp. 4–5]. And, as already noted, they have failed to cite any legal authority supporting their position. Moreover, they have not explained why such concerns would invalidate the warrant such that all evidence obtained from the warrant should be excluded, when other arguments, advanced at trial, may be utilized to address chain of custody and related issues. Where a defendant challenges the chain of custody of evidence, "such challenges go to the weight of the evidence, absent a clear showing of abuse of discretion, and do not affect admissibility" as a motion to suppress or motion in limine would. *United States v. Hillman*, 42 F.3d 1389 at *3 (6th Cir. 1994); *see also United States v. Sexton*, 119 F. App'x 735, 746 (6th Cir. 2005) ("[C]hallenges to the chain of custody go

to the weight of the evidence, not its admissibility."), *vacated in part on other grounds*, No. 02-5781, 2005 WL 6011238, at *1.

Finally, Defendants argue "there was a substantial delay between the seizure of the Defendant[s'] phone[s] and the execution of the forensic search," such that they had "concerns about the staleness of the information obtained and whether probable cause remained valid at the time of the search." *Id.* at 5. The Court notes that these vague and unsupported "concerns" about staleness and probable cause are not sufficient to warrant suppression. *See generally United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998) (stating, when evaluating whether probable cause was sufficient to support a warrant, that "we require more than mere conjecture to suppress evidence"). And, perhaps more importantly, the Court does not understand Defendants to be challenging probable cause. Instead, while it is difficult to discern the precise parameters of Defendants' arguments, given the lack of development and citation to legal authority, from the best the Court can tell, Defendants argue that the delay between the seizure and the search was unreasonable. Based on the dates given in the warrants, the delay between the cellphones' lawful seizure pursuant to the Pine Lake and Johnsontown Warrants and the issuance of the cellphone warrants was about six days. *See* [R. 46-1, p. 11]; [R. 46-3, pp. 7–9]; [R. 46-5, pp. 2, 6]; [R. 46-6, pp. 2, 6]. The United States' uncontested representation is that, at least as to Joseph (and presumably as to Laura), the cellphones were sent for the forensic searches the day the warrant for its data was issued. [R. 57, p. 12]. The searches were complete, and the phones were returned to the Jeffersontown Police within twenty-seven days of the request for forensic analysis. [R. 57-3, p. 3].

The sole case on which Defendants relies from the Fourth Circuit and similar cases from within the Sixth Circuit are easily distinguishable. In *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019), as well as in *United States v. Sykes*, 65 F.4th 867 (6th Cir. 2023), the Fourth and Sixth

Circuits recognized that cellphone searches can be unreasonable under the Fourth Amendment if there is a significant and unjustified delay between the seizure of the phone and the issuance of a warrant for a forensic search. *Pratt*, 915 F.3d at 271–72; *Sykes*, 65 F.4th at 877–78. In other words, those courts acknowledged that suppression may be justified due to an unreasonable delay in reviewing seized evidence. However, in both cases, the initial seizure was warrantless (though otherwise justified). *See Pratt*, 915 F.3d at 270; *Sykes*, 65 F.4th at 873; *see also United States v. Barnett*, No. 6:21-CR-13-GFVT-HAI-2, 2022 WL 17548069, at *2–3 (E.D. Ky. Sept. 8, 2022), *report and recommendation adopted sub nom. United States v. Taylor*, No. 6:21-CR-13-GFVT-HAI-1, 2022 WL 16922105 (E.D. Ky. Nov. 14, 2022) (noting the difference in cases involving warrantless seizures and those in which the seizures were justified by a search warrant); *Taylor*, 2022 WL 16922105, at *14 (noting the defendant was "mistake[n]" in "relying on cases involving warrantless seizure," such as *Pratt*).

A sister court in the Eastern District of Kentucky has previously explained the distinction between a delay following a warrantless seizure and a delay following a warrant-backed seizure. *Barnett*, 2022 WL 17548069, at *6. The *Barnett* court explained that, when a defendant's "phone was seized pursuant to [a] residential warrant," "[i]n terms of the allowable timeframes," the court was "in a different universe from cases involving warrantless seizures." *Id.* at *6 (collecting cases). This is because "[a]fter a court finds probable cause and issues a warrant to search, the government's interest in the items increases considerably." *United States v. Witherspoon*, No. 6:23-CR-39-REW-HAI, 2025 WL 1085553, at *7 (E.D. Ky. Jan. 29, 2025), *report and recommendation adopted*, No. 6:23-CR-39-REW-HAI, 2025 WL 830990 (E.D. Ky. Mar. 17, 2025). In such cases, "courts routinely uphold delays of multiple months between issuance of a search warrant (or a warrant-backed seizure) and the ultimate analysis of the seized devices." *Id.*

(citations omitted). Thus, regarding *Barnett*, the district court adopted the magistrate judge's report and recommendation denying suppression, stating that "caselaw on retention of electronic containers of data generally permits large delays between seizure pursuant to a warrant and subsequent review of the computer's contents" and that "the Sixth Circuit has expressly validated warrants that authorize the seizure of computer equipment for subsequent off-site review." *Taylor*, 2022 WL 16922105, at *14 (citing *Evers*, 669 F.3d at 653).

In this case, even if the initial seizure had been warrantless, a six-day delay (between the seizure and the issuance of a warrant for data extraction) would not be unreasonable after "balancing the individual's possessory interest in the object seized against the law-enforcement interests justifying the seizure and retention." *See Sykes*, 65 F.4th at 878; *cf. United States v. Burgard*, 675 F.3d 1029, 1034 (7th Cir. 2012) (finding a six-day delay not unreasonable even after a warrantless seizure). But the Court's analysis is even stronger here, where the initial seizure of the cell phones *was* pursuant to a valid warrant, and as such, Defendants had little possessory interest in the cellphones, and the warrant "justified the government's interference with [their] possessory interest[s] in the phone[s]." *Cf. Taylor*, 2022 WL 16922105, at *14 (calling the residential warrant authorizing the seizure of the defendant's cellphone "the albatross that prevent[ed] [the defendant's] arguments from taking flight"). Moreover, the Sixth Circuit has recognized that "[w]hen there is a reasonable belief that a cellphone contains evidence of a crime, there is greater justification for retention of that cellphone, pursuant to a valid warrant." *United States v. Whipple*, 92 F.4th 605, 614 n.11 (6th Cir. 2024) (citing *Sykes*, 65 F.4th at 879). The valid

premises warrants, as well as the cellphone warrants, make clear that probable cause existed to believe the phones may contain evidence of narcotics trafficking. *Cf. id.*[9]

Similarly, a twenty-seven day delay (between the issuance of the warrant and the completion of the search) is not unreasonable. *See* [R. 57, p. 11]; [R. 57-3, p. 3]; *cf. id.* at 614 (explaining that "[t]he federal rules of criminal procedure give law enforcement the authority to conduct searches of lawfully seized phones after they are seized," and "[a] substantial amount of time can be involved in the forensic imaging and review of information on cellphones" (citation modified) (first citing *United States v. Cleveland*, 907 F.3d 423, 430–31 (6th Cir. 2018); then citing Fed. R. Crim. P. 41; finally citing Fed. R. Crim. P. 41, advisory committee's note to 2009 amendments)); *Witherspoon*, 2025 WL 1085553, at *7 (noting that, after a warrant had been issued permitting the search of the seized device, "the government's interest in the items increases considerably," and "courts routinely uphold delays of multiple months between issuance of a search warrant . . . and the ultimate analysis of the seized devices").

In sum, the Court holds there was no constitutional issue with the warrant permitting inter-agency cooperation in the investigation and analysis of the cellphones. The Court also holds there was no unreasonable delay between the seizure of the phones, the procurement of the warrants for their contents, and the forensic search. As such, the Motion to Suppress will be denied.

## IV.    CONCLUSION

Therefore, and the Court being otherwise sufficiently advised, it is **HEREBY ORDERED** as follows:

1.    Defendant Laura Lanham's Motion to Join, [**R. 58**], is **GRANTED.**

---

[9] Again, the Court notes that Defendants have not argued that the warrants lacked probable cause, at least for purposes of this First Motion to Suppress. *See* [R. 46]. To the extent they challenge probable cause as to the premises warrants, they do so in a second suppression motion, [R. 62], which the Court addresses by separate order.

2.  Defendant Joseph Lanham's Motion for Hearing, [**R. 64**], is **DENIED**.

3.  The First Motion to Suppress, [**R. 46**], is **DENIED.**

This the 14th day of October, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY